**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA**

---

KIM HUDSON,

Civil No. 24-1308 (JRT/ECW)

Plaintiff,

v.

**MEMORANDUM OPINION ON CROSS
MOTIONS FOR SUMMARY JUDGMENT**

PRINCIPAL LIFE INSURANCE COMPANY,

Defendant.

---

Chase Hedrick, **FIELDS LAW FIRM**, 9999 Wayzata Boulevard, Minnetonka, MN 55305, for Plaintiff.

Margaret Ann Santos, **HINSHAW & CULBERTSON LLP**, 250 Nicollet Mall, Suite 1150, Minneapolis, MN 55401, for Defendant.

Plaintiff Kim Hudson initiated this action against Defendant Principal Life Insurance Company ("Principal Life") under the Employee Retirement Income Security Act of 1974 ("ERISA") after being denied long-term disability and life coverage during disability benefits under her employer-sponsored welfare benefit plan.  The parties filed cross motions for summary judgment.  Hudson contends that she became disabled—and therefore entitled to benefits—due to coccydynia, a condition characterized by pain in the coccyx.  Principal Life's position is that Hudson is not disabled and that, even if she is disabled, a pre-existing conditions exclusion precludes coverage.  Because Hudson received treatment for low back pain during the "lookback" period, Hudson is not entitled to long-term disability benefits.  The Court will therefore deny Plaintiff's Motion for

Summary Judgment (Docket No. 60) and grant Defendant's Motion for Summary Judgment (Docket No. 65).

**BACKGROUND**

**I.   THE PLANS**

Because Defendant Principal Life's summary judgment motion addresses a long-term disability policy and a life coverage policy, the Court will outline the terms of each policy separately.

**A.   Long-Term Disability Policy**

Consumer Cellular, Inc., Hudson's employer, contracted with Principal Life to provide long-term disability ("LTD") benefits to Hudson.  (*See* Administrative Record ("Admin. R.") at 2467–2571,[1] June 3, 2025, Docket Nos. 17–58.)  The Long-Term Disability Insurance policy ("LTD Policy") details the general terms and conditions that govern an employee's entitlement to benefits under the plan.  (*Id.* at 2513–2571.)

**1.   Eligibility and Effective Date**

Part III of the LTD Policy outlines, among other things, eligibility requirements and various effective dates.  (*Id.* at 2540–2546.)

Part III, Section A (Eligibility), Article 1 provides that "[a] person will be eligible for insurance on the first of the [calendar] Insurance Month coinciding with or next following

---

[1] This Order will cite to the Administrative Record using the numerical portion of the Bates pagination, omitting unnecessary zeros.

the date the person completes 30 consecutive days of employment with the Policyholder as a Member." (*Id.* at 2540.)

Part III, Section B (Effective Dates), Article I defines the effective date for those "actively at work":

> A Member's effective date for Long Term Disability Insurance will be as explained in this section, if the Member is Actively at Work on that date. If the Member is not Actively at Work on the date insurance would otherwise be effective, such insurance will not be in force until the day of return to Active Work.

(*Id.* at 2541.)

Part I of the LTD Policy defines "Actively at Work":

> A Member will be considered Actively at Work if he or she is engaged in the active performance of all of his or her regular duties with the intent of continuing the active performance of all said duties on an ongoing basis. Short term absence because of a regularly scheduled day off, holiday, vacation day, jury duty, funeral leave, or personal time off, or an approved FMLA leave of absence for the care of a qualified family member is considered Active Work provided the Member is able and available for active performance of all of his or her regular duties and was working the day immediately prior to the date of his or her absence.

(*Id.* at 2520.)

### 2.    Pre-existing Conditions Exclusion

Part IV, Section O (Limitations) of the LTD Policy also includes several exclusions—such as one for pre-existing conditions—that may preclude benefits. The policy defines a pre-existing condition as the following:

> A Preexisting Condition is any sickness or injury, including all related conditions and complications, or pregnancy, for which a Member:

a.   received medical treatment, consultation, care, or services; or

b.   was prescribed or took prescription medications;

in the three month[2] period before he or she became insured under the Group Policy.

No benefits will be paid for a Disability that results from a Preexisting Condition unless, on the date the Member becomes Disabled, he or she has been Actively at Work for one full day after completing 12 consecutive months during which the Member was insured under the Group Policy.

(*Id.* at 2560–61.)

### 3.   Miscellaneous Clauses

The LTD Policy is subject to an Oregon choice-of-law clause and a discretionary clause, stating:

We reserve discretion to construe or interpret the provisions of the Group Policy, to determine eligibility for benefits, and to determine the type and extent of benefits, if any, to be provided, subject to the Claim Procedures shown on page GH 823 of this booklet.  This interpretation may be modified or reversed by a court or regulatory agency with appropriate jurisdiction.

(*Id.* at 2471.)

### B.   Life Coverage During Disability

The Life Coverage During Disability ("LCDD") clause of the LTD Policy permits the insured to retain life insurance coverage without paying premiums when certain conditions are met.  (Admin. R. at 1949.)  To be eligible for benefits, the employee must

---

[2] The Court will refer to this three-month period as the "lookback period."

-4-

"become Totally Disabled prior to the earlier of retirement or attainment of age 60 . . . ." (Admin. R. at 2450.)

## II.   FACTUAL BACKGROUND

### A.  Hudson Works Briefly, Then Seeks Disability Coverage

Consumer Cellular, Inc. hired Hudson as a customer service representative on June 6, 2022.  (Admin. R. at 8, 890, 1498.)  On October 14, 2022, Hudson stopped working due to her alleged disability.  (*Id.* at 890.)

On December 27, 2022, Dr. Jonathan Landsman ordered that Hudson undergo an MRI of her sacrum and coccyx, and he prescribed her oxycodone.  (*Id.* at 914.)  Notably, this order is found under Heading 1 of the note, titled "Low back pain."  (*Id.*)  Heading 2 is titled "Lumbar radiculopathy," and Heading 3 is titled "Lumbar spinal stenosis."  (*Id.*) The MRI, conducted on January 5, 2023, showed "moderate periosteal edema around the sacrococcygeal junction" and "[m]inimal discogenic edema."  (*Id.* at 358.)

On January 10, 2023, Dr. Landsman saw Hudson again and noted that "she may need a coccyx injection."  (*Id.* at 906.)  Again, this recommendation is found under Heading 1, titled "Low back pain."  (*Id.*)  Additional discussion is provided under a separate "Lumbar spinal stenosis" heading.  (*Id.*)  That same day, Dr. Landsman provided a doctor's note "due to her back condition," stating that Hudson was "unable to work due to her restrictions" beginning on January 15, 2023.  (*Id.* at 896.)  He imposed activity restrictions: "No pushing, pulling, lifting, bending, twisting, climbing, no constant walking[,] no constant standing or sitting."  (*Id.*)

On February 8, 2023, Dr. Landsman submitted an Attending Physician Statement, stating that Hudson was unable to work due to "low back pain." (*Id.* at 2270–71.) According to Dr. Landsman, Hudson was experiencing "[right] leg pain, coccydynia, low back pain, lumbar radiculopathy, lumbar spinal stenosis." (*Id.*) According to Dr. Landsman, Hudson stated that she had experienced these symptoms for a year and a half, from November 29, 2022. (*Id.*)

On or about February 9, 2023, Hudson applied for long-term disability under the LTD policy. (*Id.* at 891.) The application described her disability as "3 herniated discs, Inflamed Tailbone Sciatica" which arose out of motor vehicle accident that occurred on May 17, 2021. (*Id*.)

Dr. Landsman also referred Hudson to Arizona Pain Relief. (*See id.* at 415.) On February 28, March 22, and April 26, 2023, Hudson went to Arizona Pain Relief and complained of tailbone pain. (*Id.* at 369, 372, 375.) The February 28, 2023 progress note states that Hudson's "Low back pain" was one of the reasons for the visit. (*Id.* at 415.) The note contained the following assessments: lumbar spondylosis, coccydynia, lumbar foraminal stenosis, and lumbar radiculopathy. (*Id.*; *see also id.* at 401.) Additional records from Arizona Pain Relief dated June 29, July 24, August 21, September 19, October 19, and December 27, 2023 confirm that Hudson was diagnosed with sacroiliitis and sacrococcygeal disorder. (*Id.* at 349–50, 344–45, 341, 336–38, 334–35, 331–32.) These

same records note that Hudson's chief complaint was either  "low back pain" or "tailbone pain."  (*Id.*)

### B.       Pre-Existing Condition Review

In early 2023, Principal Life conducted a "Pre-existing Condition" review because Hudson stopped working within twelve months of the effective date of the LTD coverage. (*Id.* at 1859 (providing Hudson notice of Principal Life's decision).)  The purpose of the review was to determine whether Hudson's disability was a pre-existing condition.  (*Id.*)

After conducting its review, Principal Life denied Hudson's LTD claim under the pre-existing condition exclusion by letter dated June 7, 2023, reasoning that Hudson was "either seen, received treatment, or was prescribed medication in the 3-month time frame before [she] had LTD coverage."  (*Id.*)  At this time, Principal Life's position was that effective date of the LTD coverage was August 1, 2022.  (*Id.* at 1860.)  As a result, the three-month lookback period purportedly spanned May 1, 2022, through July 31, 2022. (*Id.*)

In its denial letter, Principal Life noted that, in addition to Dr. Landsman's statement that Hudson had indicated her condition started November 29, 2022, Principal Life had received medical records, which purportedly showed that Hudson had been treated for her disabling condition during the three-month lookback period.  (*Id.*) Specifically, a telehealth office visit note by Dr. Aarohi Munshi of Adelante Healthcare, dated May 18, 2022, described Hudson's condition as "[c]hronic right-sided low back pain with right-sided sciatica."  (*Id.* at 995, 1881.)  The note described the present history of

the illness as "low back pain[,] ongoing for months and getting worse[,] right sided sciatica[,] unable to sleep well or walk well." (*Id.* at 997, 1883.)  Dr. Munshi referred Hudson to a pain doctor for acupuncture, referred her to physical therapy for her sciatica, and prescribed oxycodone.  (*Id.* at 995, 1881.)

The June 7, 2023 denial letter also referenced a phone call on May 30, 2023 between Principal Life and Hudson.  (*Id.* at 1860.)  According to Principal Life's call notes, when asked if she stopped working "due to low back pain," Hudson responded that "that was correct."  (*Id.* at 171.)  Hudson explained that she "had many issues related to the back pain, but th[at] [was] the reason she went out of work."  (*Id.*)  Principal Life advised Hudson that because Dr. Munshi saw Hudson for "chronic right-sided low back pain," referred her to a pain doctor and a physical therapist, and prescribed her oxycodone, her disabling condition was pre-existing, thereby precluding coverage.[3]  (*Id.*; *see also id.* at 1860.)

---

[3] During the May 30, 2023 call, Hudson asserted that she did not act on Dr. Munshi's referrals and that "all she did was prescribe pain medication for her back pain."  (Admin. R. at 171.)  Although Hudson denies acting on Dr. Munshi's referrals, a physical therapy discharge summary, dated February 10, 2023, states that Hudson attended three sessions after being referred by Dr. Munshi for "low back pain," but she was ultimately discharged for non-compliance after she failed to attend three additional scheduled appointments.  (*Id.* at 1105.)

### C.    Hudson Appeals Principal Life's Denial of Benefits

Hudson appealed Principal Life's denial of benefits on October 12, 2023.[4] (*Id.* at 1016.)  On February 9, 2024, Principal Life denied Hudson's appeal, concluding that Hudson was not disabled and that her conditions were pre-existing.  (*Id.* at 302.)  The denial letter also determined that the relevant lookback period was May 9, 2022 through August 8, 2022.[5] (*Id.*)  Principal Life acknowledged that, on February 8, 2023, Dr. Landsman concluded that Hudson could not work due to "low back pain, lumbar radiculopathy, right leg pain, and spinal stenosis."  (*Id.* at 303; *see also id.* at 2270.)  It noted that, on May 18, 2022, Dr. Munshi evaluated Hudson for "chronic right-sided low back pain with right-sided sciatica" and provided Hudson two referrals and an oxycodone prescription.  (*Id.* at 303.)  In addition, Principal Life observed that a July 11, 2022 MRI showed "multilevel degenerative changes superimposed on epidural lipomatosis result most prominently in: moderate to severe spinal canal effacement from L2-L3 to L4-L5;

---

[4] After Hudson appealed, Dr. Gary Pushkin, an orthopedic surgeon, provided an expert report opining on whether Hudson was treated for her alleged disability during the three-month lookback period.  (*Id.* at 442–48; *see also id.* at 303.)  Dr. Pushkin acknowledged that Hudson was diagnosed with "chronic low back pain with spinal stenosis" and opined that she was treated for these conditions between May 9, 2022 and August 8, 2022, the alleged lookback period.  (*Id.* at 444.)

[5] When considering Hudson's appeal, Principal Life reconsidered its earlier conclusion that LTD Policy's effective date was August 1, 2022.  In a letter dated November 30, 2023, Principal Life explained that based on Hudson's timecards, she was not on Active Work status from July 23, 2022, through August 6, 2022.  As a result, Principal Life concluded that the LTD policy's effective date was August 9, 2022, the date she returned to Active Work.  (Admin. R. at 1162–63.)  Based on this revised effective date, Principal Life took the position that the applicable lookback period ran from May 9, 2022, through August 8, 2022.

moderate neural foraminal narrowing at L3-L4 and L5-S1." (*Id.* at 303.)  Principal Life also cited the expert report of Dr. Gary Pushkin, who opined that Hudson received treatment for low back pain during the lookback period.  Taken together, Principal Life once again determined that Hudson was not "disabled" under the LTD policy and that Hudson's claim was barred by the pre-existing conditions exclusion.  (*Id.* at 304.)

### D.      Hudson Seeks LCDD Benefits

In addition to her LTD claim, Hudson filed a claim with Principal Life for benefits under the Life Coverage During Disability ("LCDD") clause of her LTD Policy, and Principal Life denied her LCDD claim because she was already 60 years old when she became disabled.  (*Id* at 1949.)  The denial letter noted that Hudson was born in September of 1962.  (*Id.*)  Dr. Landsman deemed Hudson totally disabled on January 10, 2023.  (*Id.* at 896.)  But because Hudson became disabled after she attained 60 years of age, Principal Life determined that she was not entitled to LCDD benefits under the terms of the policy. (*Id.* at 1949–50.)  Hudson did not administratively appeal Principal Life's initial denial of LCDD benefits.

### III.     PROCEDURAL HISTORY

Hudson brought this action in April of 2024, alleging that Defendant Principal Life violated ERISA for failing to pay Hudson long-term disability benefits under the LTD Policy. (Compl., April 12, 2024, Docket No. 1.)  Hudson seeks LTD benefits under 29 U.S.C. § 1132(a)(1)(B) and attorney's fees and costs under § 1132(g).  The parties filed cross-motions for summary judgment on June 5, 2025 (Docket Nos. 60 & 65.)  In addition to

moving for summary judgment on Hudson's LTD claim, Principal Life moves for summary judgment on Hudson's LCDD claim.  Hudson does not respond to, or otherwise oppose, Principal Life's summary judgment motion as to the LCDD claim.

**DISCUSSION**

**I.    STANDARD OF REVIEW**

**A.  Summary Judgment Standard**

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party can demonstrate that it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  A fact is material if it might affect the outcome of the lawsuit, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for either party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  A court considering a motion for summary judgment must view the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences that can be drawn from those facts.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**B.    ERISA Standard**

The parties dispute the appropriate standard of review for evaluating Principal Life's decision to deny LTD benefits.

A participant in an ERISA plan may initiate an action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."  29 U.S.C. § 1132(a)(1)(B).

-11-

The Court generally reviews the denial of ERISA benefits de novo. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). But an abuse of discretion standard applies if "the benefit plan gives the administrator . . . discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Johnson v. United of Omaha Life Ins. Co.*, 775 F.3d 983, 986–87 (8th Cir. 2014) (quoting *Bruch*, 489 U.S. at 115).

Neither party disputes that the LTD policy contains a discretionary clause. (*See* Admin R. at 2471 (Principal Life "reserve[s] discretion to construe or interpret the provisions of the Group Policy, to determine eligibility for benefits, and to determine the type and extent of benefits . . . .") But Hudson argues that a de novo standard of review applies because the LTD policy is governed by Oregon law and an Oregon insurance regulation, Or. Admin. R. 836-010-0026, forbids discretionary clauses.[6] Hudson further contends that because Principal Life, the plan administrator, both evaluates and pays the claim, a conflict of interest exists, such that a heightened standard of review (i.e., de novo) is required.

In 2015, Oregon passed a regulation prohibiting discretionary clauses. *See* Or. Admin. R. 836-010-0026(2) ("A policy, contract or agreement offered or issued in this

---

[6] Though not addressed in the parties' briefing, the Oregon choice-of-law provision is enforceable. "Where a choice of law is made by an ERISA contract, it should be followed, if not unreasonable or fundamentally unfair." *Brake v. Hutchinson Tech. Inc. Grp. Disability Income Ins. Plan*, 774 F.3d 1193, 1197 (8th Cir. 2014) (quoting *Buce v. Allianz Life Ins. Co.*, 247 F.3d 1133, 1149 (11th Cir. 2001)). Given that Consumer Cellular was founded in Oregon, there is nothing unfair or unreasonable about enforcing the Oregon choice-of-law provision.

state . . . may not contain a discretionary clause or other language purporting to reserve discretion to the insurer to interpret the terms of the contract . . . .").  A provision may be deemed a "discretionary clause" when "[t]he insurer has sole discretion to determine whether a claim is compensable or its interpretation of the provisions of the policy is entitled to deference in a subsequent proceeding."  Or. Admin. R. 836-010-0026(1)(a)(G).

Because the Oregon regulation prohibits discretionary clauses like the one contained in LTD policy and the regulation is not preempted by ERISA,[7] the Court will review Principal Life's denial of LTD benefits de novo.

---

[7] Although not addressed by the parties, the Court must first determine whether the Oregon regulation is preempted by ERISA.  In general, ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any [covered] employee benefit plan."  29 U.S.C. § 1144(a).  However, under the "savings clause," state laws that "regulate[] **insurance**, banking, or securities" are not preempted by ERISA.  *Id.* § 1144(b)(2)(A) (emphasis added).  Here, Or. Admin. R. 836-010-0026 plainly relates to an employee benefit plan and thus would be preempted by ERISA unless the savings clause applies.  *See id.* § 1144(a).  As further explained, below, the Court finds that the savings clause applies, and that the Oregon regulation is not preempted by ERISA.

The Supreme Court has held that for a state law to be deemed a law which regulates insurance, the law must meet two requirements: (1) it "must be specifically directed toward entities engaged in insurance"; and (2) it "must substantially affect the risk pooling arrangement between the insurer and the insured."  *Kentucky Ass'n of Health Plans, Inc. v. Miller*, 538 U.S. 329, 342 (2003).

Both elements are satisfied here.  First, the Oregon regulation is specifically directed at the insurance industry as it directly targets their insurance practices.  The plain language of the regulation directly controls insurance contracts by setting limits on permissible terms.  Second, the regulation substantially affects the risk pooling arrangement between insurers and insureds by prohibiting them from negotiating discretionary clauses in exchange for lower premiums, which reduces the range of acceptable agreements between the parties.  Moreover, by eliminating the deferential, abuse of discretion standard, insurers will likely pay more claims, thereby enhancing the benefit of risk pooling.  Although the Eighth Circuit has not addressed how anti-discretionary clause statutes affect the appropriate standard of review, several circuit courts—including the Sixth, Seventh, and Ninth Circuits—have determined that comparable state

## II.    ANALYSIS

The LTD Policy presents two issues.[8]  The first is whether Hudson was treated for her disabling condition during the lookback period such that the pre-existing condition exclusion bars LTD coverage.  The second is whether Hudson is disabled under the terms of the policy. Because the Court concludes that the LTD Policy's pre-existing condition exclusion applies, the Court need not address whether Hudson is disabled under the policy.

### A.  Three-Month Lookback Period

To evaluate Hudson's entitlement to LTD coverage, the Court must first identify the relevant lookback period, which the parties dispute.  Principal Life argues that because the LTD coverage effective date was August 9, 2022, the lookback period runs from May

---

prohibitions on discretionary clauses in ERISA plans are **not** subject to preemption.  *See Am. Council of Life Insurers v. Ross*, 558 F.3d 600, 609 (6th Cir. 2009); *Fontaine v. Metro Life Ins. Co.*, 800 F.3d 883, 889 (7th Cir. 2015); *Standard Ins. Co. v. Morrison*, 584 F.3d 837, 846–47 (9th Cir. 2000).  Because the savings clause applies to the Oregon regulation, it is not preempted.  The Court will, therefore, review Principal Life's denial of LTD benefits de novo.

[8] Hudson does not respond to, or otherwise oppose, Principal Life's summary judgment motion as to the LCDD claim.  The Court will therefore grant Principal Life's motion for summary judgment on this claim.  Even if Hudson opposed Principal Life's motion, the Court would grant the motion as to this claim because Hudson was 60 years old before becoming allegedly disabled.  To be eligible for benefits, the employee must "become Totally Disabled prior to the earlier of retirement or attainment of age 60 . . . ."  (Admin R. at 2450.) It is undisputed that Hudson stopped working in October of 2022 (*id.* at 891) and that Dr. Landsman deemed Hudson disabled in January of 2023, (*id.* at 896).  The record also shows that Hudson's date of birth is September 1962, and therefore, she turned 60 years old in September 2022—**before** the date she allegedly became disabled.  Because Hudson attained the age of 60 before she became disabled, she is not entitled to LCDD benefits under the terms of the LTD Policy.

9, 2022 through August 8, 2022.  (*See, e.g.*, Def.'s Mem. Opp. Pl.'s Mot. Summ. J. at 6, June 26, 2025, Docket No. 71.)   Hudson, however, appears to make contradictory arguments regarding the lookback period.  In one submission, she argues that because she commenced employment on June 6, 2022, the lookback period runs from March 1, 2022 through June 1, 2022.   (Pl.'s Mem. Opp. Def.'s Mot. Summ. J. at 8, June 19, 2025, Docket No. 70.)[9]  But in another submission, she states that the effective date is August 31, 2022 and implies that lookback period is May 1, 2022 through August 31, 2022.  (Pl.'s Mem. in Supp. Pl.'s Summ. J. at 3, June 5, 2025, Docket No. 62.)  After careful review of the administrative record, Court concludes as a matter of law that the relevant lookback period is May 9, 2022, through August 8, 2022.

The record demonstrates that Hudson was hired as a customer service representative on June 6, 2022.  (Admin R. at 8, 881, 1498.)  The LTD policy states that "[a] person will be eligible for insurance on the first of the [calendar] Insurance Month coinciding with or next following the date the person completes 30 consecutive days of

---

[9] Hudson states, without citation, that she commenced employment on June 1, 2022. (Pl.'s Mem. Opp. Def.'s Mot. Summ. J. at 6, June 19, 2025, Docket No. 70.)  But at the same time, she asserts that her first date of employment was June 6, 2022.  (*Id.* at 8.)  Regardless of the Hudson's position, the Court readily concludes that the record evidence shows that her first day of employment was June 6, 2022.

employment with the Policyholder as a Member." (*Id.* at 2540.) Absent other circumstances, the effective date would have been August 1, 2022.[10]

But the LTD policy also provides that "[i]f the Member is not Actively at Work on the date insurance would otherwise be effective, such insurance will not be in force until the day of return to Active Work." (*Id.* at 2541.) An employee is "actively at work" if "she is engaged in the active performance of all of . . . her duties with the intent of continuing the active performance of all said duties on an ongoing basis." (*Id.* at 2520.) Short-term absences due to a scheduled day off, holiday, vacation, jury duty, funeral leave, personal time, or approved FMLA leave is considered active work so long as the employee was "able and available for active performance . . . and was working the day" before the date of absence. (*Id.*) But Hudson's wage and timecard records show that she was not actively working from July 23, 2022 through August 6, 2022. (*Id.* at 1162–63, 1493–94.) Hudson's absences were classified as "suspended/unplanned," "no call/no show unplanned," or "called out unplanned." (*Id.* at 1493–94.) Because these absences are not one of the enumerated short-term absences, Hudson was not actively working on August 1—the date Hudson's LTD coverage would have become effective. Rather, the records show that

---

[10] Thirty days after June 6, 2022 is July 6, 2022, making August 1, 2022 the first day of the following calendar month.

Hudson resumed work on August 9, 2022,[11] and under the terms of the LTD policy, that date is the effective date of the policy. (*Id.* at 1163, 1494.)

In sum, the record evidence establishes that the effective date of the LTD policy is August 9, 2022. The three-month lookback period therefore runs from May 9, 2022, through August 8, 2022.

**B.     Applicability of Pre-existing Condition Exclusion**

Having established that the lookback period runs from May 9, 2022, through August 8, 2022, the Court will evaluate whether there is a genuine dispute of material fact as to whether Hudson was treated for her purported disabling condition during the lookback period.

The pre-existing exclusion applies when a member "received medical treatment, consultation, care, or services" or "was prescribed or took prescription medications" for "any sickness or injury, including all related conditions and complications" during the three-month lookback period. (*Id.* at 2560.)

During the lookback period, the record reveals two events. First, on May 18, 2022, Dr. Munshi saw Hudson by telehealth visit. Hudson's conditions were described as "[c]hronic right-sided low back pain with right-sided sciatica." (*Id.* at 995.) The present illness history section described Hudson's condition as "low back pain" and "right-sided

---

[11] August 7th and 8th appear to be scheduled days off.

sciatica." (*Id.* at 997.)  Dr. Munshi then referred Hudson to acupuncture and physical therapy and prescribed oxycodone.  (*Id.* at 995.)

Second, on July 11, 2022, Hudson received an MRI, which indicated "[l]umbar radiculopathy, low back pain." (*Id.* at 427.)  In Principal Life's initial denial letter, it described the July 11, 2022 MRI as showing "multilevel degenerative changes superimposed on epidural lipomatosis result most prominently in: moderate to severe spinal canal effacement from L2-L3 to L4-L5; moderate neural foraminal narrowing at L3-L4 and L5-S1." (*Id.* at 303.)

It is undisputed that Dr. Landsman saw Hudson on January 10, 2023, and noted that she "may need a coccyx injection" and that this recommendation was located under Heading 1, titled "Low Back Pain." (*Id.* at 906.)  Dr. Landsman also completed an Attending Physician Statement, stating that Hudson was unable to work due to "low back pain." (*Id.* at 2270–71.)  Dr. Landsman's statement detailed that Hudson was experiencing "[right] leg pain, coccydynia, low back pain, lumbar radiculopathy, lumbar spinal stenosis." (*Id.*)

Plaintiff argues that because the May 18, 2022 office note (*id.* at 995) and the July 11, 2022 MRI summary (*id.* at 427) do not refer to the coccyx or the sacral region of the spine, the pre-existing exclusion does not apply.  Although Principal Life does not dispute the lack of reference to "coccyx" or "sacral region" in those documents, it contends that these documents show that she was treated for "low back pain"—the same condition Dr. Landsman found to be disabling.

The Court agrees with Principal Life.  The problem with Hudson's argument is that Principal Life did not deny her claim because of treatment related to the coccyx or sacrum during the lookback period; it denied the claim because her medical records show that she was treated for "low back pain" during the lookback period.  Dr. Landsman's Attending Physician Statement plainly states that she was unable to work due to "low back pain." (*Id.* at 2270.)  The record shows that she was treated for "[c]hronic right-sided low back pain with right-sided sciatica" on May 18, 2022, and she underwent an MRI on July 11, 2022, for which one indication was "low back pain."  Because Hudson's disability was based on her low back pain and she was treated for low back pain during the lookback period, the pre-existing condition exclusion squarely applies.

This conclusion is further supported by Principal Life's phone conversation with Hudson on May 30, 2023, in which she confirmed that she was "out of work due to low back pain." (*Id.* at 171.)   So, the issue is not whether the coccyx or sacrum were referenced in the May 18 and July 11 records.  What matters is that Hudson was treated for **low back pain**—same condition that her attending physician found to be disabling.  Because of her treatment history, she is squarely within the pre-existing condition exclusion.[12]

---

[12] Hudson further argues that the record reflects a distinction between the sacral/coccyx area and the lumbar spine.  The Court agrees. (*See, e.g.*, *id.* at 2270 (Dr. Landsman noted that Hudson was experiencing "[right] leg pain, coccydynia, low back pain, lumbar radiculopathy, lumbar spinal stenosis").) But that distinction does not save her claim as a matter of law because it cannot be said that coccydynia or sacral pain alone caused her disability.  Hudson's treating

-19-

Because there is no genuine dispute of material fact as to whether Hudson was treated for her disabling condition during the lookback period and the pre-existing condition exclusion bars her claim, the Court will grant Defendant's Motion for Summary Judgment and deny Plaintiff's Motion for Summary Judgment.

**CONCLUSION**

In sum, Principal Life's denial of LTD benefits must be reviewed de novo because Oregon law prohibits discretionary clauses like the one found in Hudson's policy. After a de novo review of Principal Life's denial of LTD benefits, the Court concludes that Principal Life properly denied Hudson benefits under the pre-existing condition exclusion. In addition, the Court will grant the Principal Life's motion for summary judgment as to the LCDD claim because the record establishes that Hudson became disabled after she attained the age of 60, rendering her ineligible for LCDD benefits.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff Kim Hudson's Motion for Summary Judgment (Docket No. [60]) is **DENIED**; and

---

physician based his disability determination at least in part on her "low back pain" (*id.* at 2270), and she was treated for "low back pain" on May 18 and July 11, 2022. The distinction between different parts of the spine is therefore immaterial to the Court's conclusion that the pre-existing condition exclusion precludes LTD benefits.

2. Defendant Principal Life Insurance Company's Motion for Summary Judgment

   (Docket No. [65]) is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


DATED: February 23, 2026
at Minneapolis, Minnesota.

JOHN R. TUNHEIM
United States District Judge